Litter Allen **FORD,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–03–01171–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 2, 2004.

Rehearing Overruled Jan. 13, 2005.

James M. Leitner, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney—Harris County, Amanda J. Peters, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, HIGLEY, and HANKS.

## OPINION

SAM NUCHIA, Justice.

Appellant, Litter Allen Ford, pleaded not guilty to the offense of aggravated robbery. The jury found appellant guilty and assessed punishment at 20 years in prison. Appellant presents six points of error. In his first two points of error, appellant complains that the evidence was legally and factually insufficient to prove that he "used or exhibited" a firearm during the alleged offense. In his third and fourth points of error, appellant complains that the evidence was legally and factually insufficient to prove that he had the intent to commit theft or attempted theft during the alleged offense. In his fifth point of error, appellant complains of the trial court's denial of his motion for the jury instruction to include "the lesser included offense of attempted aggravated robbery." In his sixth point of error, appellant complains that the trial court erred in permitting "expert testimony regarding the identification of the appellant by DNA analysis." We affirm.

## BACKGROUND

On September 19, 2002, at approximately 8:05 a.m., Cynthia Pierre and Bennie Burson, armed guards working for Loomis Fargo, drove an armored truck to John's Grocery (the "store") to deliver $6,000 in cash. As they were driving up to the store, they noticed appellant sitting alone on the ground to the side of the store. They knew this area to be a place where day-laborers waited for potential employers, so they were not initially alarmed, but did notice that appellant was in the area alone. Burson parked the armored car next to the store and Pierre got out of the armored car with a money bag, containing the $6,000 in cash, wrapped around her left arm. Pierre testified that she is four feet, eleven inches tall and had a .357 magnum caliber handgun in a holster on her right hip. Pierre stated on cross-examination that her pistol was held in its holster by "a little belt, [a] snap belt."

When Pierre got out of the armored car with the cash and approached the store's front door, Burson noticed that appellant stood up and moved toward the entrance to the store as well. As Pierre opened the door and began to step inside the store, appellant grabbed her from behind and pulled her back outside. Pierre testified that appellant, immediately after pulling her from the store's entrance, "had his hands on my pistol." Pierre grabbed the hand appellant had on the handgrip of her pistol and pushed down to prevent appel-

lant from removing it from the holster. Burson testified that appellant had his hand on Pierre's pistol and that he was "starting to pull the pistol out" of the holster, but indicated that Pierre's pushing down kept him from removing it.

According to the testimony of both Pierre and Burson, while appellant kept one hand on the pistol, he had his other arm around Pierre's waist from behind, and he lifted her off her feet and attempted to throw her to the ground. He attempted this at least twice, but Pierre managed to land on her feet. Throughout the struggle, appellant continued to pull up on the gun, while Pierre pushed down. Pierre acknowledged that appellant was much bigger and stronger than she was.

Burson had a clear view of the struggle taking place "[r]ight in front of me" out of the front windshield of the armored car. He had difficulty getting out of the armored car to come to Pierre's aid. Once he managed to get out of the armored car, he drew his pistol and shouted to appellant to "let her loose." Burson testified that he was approximately five feet from appellant, but did not fire his pistol at first because he was afraid of hitting Pierre. When she was able to bend at the waist enough for Burson to have a clear shot, he fired his pistol, striking appellant in the shoulder. Both appellant and Pierre fell to the ground together. After falling, appellant lost his grip on Pierre's pistol and she was able to regain control of it and get away from him. Pierre still had the money bag wrapped around her left arm. Burson testified that appellant started to get up so he hit him with the butt of his pistol, but that appellant got up anyway and fled.

## DISCUSSION

### *Use or Exhibition of a Firearm*

■ In his first two issues, appellant asserts that the evidence was legally and factually insufficient to support his conviction for aggravated robbery because the State failed to prove that he "used or exhibited a firearm during the alleged offense, as alleged in the indictment." Specifically, appellant urges that his fierce and concerted effort to take Pierre's pistol cannot be considered "use or exhibition" of the pistol because "appellant never gained sufficient control over the complainant's [Pierre's] weapon." Appellant admits that the facts are not in dispute. The uncontradicted evidence is that appellant attempted to take Pierre's pistol, had his hand on the handgrip of the pistol, and was "starting to pull the pistol out," but failed to fully extract it from its holster only because Pierre resisted by pushing down on her pistol and appellant's hand. The struggle ended only after Burson shot and wounded appellant.

■ In reviewing the evidence on legal sufficiency grounds, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000); *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). In a factual sufficiency review, we view all the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim. App.2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 481 (Tex.Crim.App.2004)). The appellate court should not substitute its own judgment for that of the fact find-

er. *Jones v. State,* 944 S.W.2d 642, 648 (Tex.Crim.App.1996).

A robbery becomes an aggravated robbery if the actor "uses or exhibits a deadly weapon." TEX. PEN.CODE ANN. § 29.03(a)(2) (Vernon 2003); *McCain v. State,* 22 S.W.3d 497, 501 (Tex.Crim.App. 2000). In *McCain,* the Court of Criminal Appeals interpreted the phrase "uses or exhibits a deadly weapon" in the aggravated robbery statute to mean the "employing of a deadly weapon in any manner that facilitates the associated felony." *Id.* at 502 (citing *Patterson v. State,* 769 S.W.2d 938 (Tex.Crim.App.1989)).

The facts in this case show that appellant had control of the pistol sufficient to begin removing it from its holster. He was prevented from fully removing and deploying the weapon against Pierre because she was able to hold onto his hand until Burson shot him. Certainly appellant had sufficient control of the pistol to put both Pierre and Burson in fear of their lives.

Viewing the evidence in the light most favorable to the prosecution, we hold that a rational jury could find that appellant used or exhibited a deadly weapon in the commission of robbery as alleged in the indictment. Reviewing all of the evidence in a neutral light, we also find that the evidence was not so weak that the verdict is clearly wrong and manifestly unjust, nor do we find the contrary evidence so strong that the standard of proof beyond a reasonable doubt could not have been met.

We overrule appellant's first two issues.

### Intent to commit theft

■ In his third and fourth issues, appellant asserts that the evidence was legally and factually insufficient to support his conviction for aggravated robbery because "the State failed to prove that appellant had the intent to commit theft or attempt-ed theft during the alleged offense, as required by statute." Specifically, appellant argues that there is nothing in the record to indicate appellant knew that Pierre was bringing cash into the store. Appellant speculates that it was equally likely she was going to take money out of the store instead. Because there is no evidence that appellant said anything during the robbery or that he grabbed at the money bag, he asserts that there is no evidence that he intended to commit theft of the money.

■■ A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp.2004); *Parks v. State,* 960 S.W.2d 234, 237, (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). Proof of a completed theft is not required to support a robbery conviction. *See Demouchette v. State,* 731 S.W.2d 75, 78 (Tex. Crim.App.1986). Juries may infer intent from the defendant's conduct and surrounding circumstances. *LaPoint v. State,* 750 S.W.2d 180, 182 (Tex.Crim.App.1986); *Washington v. State,* 127 S.W.3d 111, 117, (Tex.App.-Houston [1st Dist.] 2003, no pet.).

Appellant's argument is without merit. Pierre arrived in an armored car conspicuously marked with the Loomis Fargo logo. Pierre was in uniform, armed, and carrying a money bag into the store in the early morning hours. Appellant purposefully rose up from a sitting position and moved from the side of the store building to get behind Pierre. He then attacked her from behind and placed his hand on her pistol and began to pull it out of its holster. He ceased his efforts only after being shot and wounded. From these circumstances and appellant's actions, a jury could reasonably infer that he intended to commit theft.

Viewing the evidence in the light most favorable to the prosecution, we hold that the evidence was legally sufficient for a rational jury to find that appellant intended to commit theft. After reviewing all of the evidence in a neutral light, we find the evidence is not so weak that the verdict is clearly wrong and manifestly unjust. We further find that the contrary evidence was not so strong that the standard of proof beyond a reasonable doubt could not have been met.

We overrule appellant's third and fourth issues.

### Lack of instruction on "attempted aggravated robbery"

■ In his fifth issue, appellant asserts that the trial court erred in refusing to grant his request that the jury be instructed on "the lesser included offense of attempted aggravated robbery." Specifically, appellant contends that he was entitled to an "attempt" charge because it was possible for the jury to conclude that he "never achieved sufficient control over the firearm to constitute 'use or exhibition' of the firearm."

■ A charge on a lesser included offense "is not required unless there is testimony raising such issue that appellant, if guilty, is guilty only of the lesser offense." *Dovalina v. State,* 564 S.W.2d 378, 383 (Tex.Crim.App.1978) (quoting *Daywood v. State,* 157 Tex.Crim. 266, 248 S.W.2d 479, 481 (1952)). The State's evidence showed all the elements of aggravated robbery. The defense rested without calling witnesses or introducing any evidence. The jury was instructed on the lesser included offense of robbery. If appellant's specific complaint were correct—that the jury could have concluded that he didn't "use or exhibit" a deadly weapon—then the aggravated element would not have been found and he would have been guilty of robbery. *Compare* Tex. Penal Code Ann. § 29.02(a)

*with* § 29.03(a)(2) (Vernon 2003) (demonstrating that use or exhibition of a deadly weapon elevates offense of robbery to offense of aggravated robbery).

The trial court did not err in refusing to grant appellant's request for a jury instruction on "attempted aggravated robbery." We overrule appellant's fifth issue.

### Expert Testimony on DNA Matching

■ In his sixth and final issue, appellant asserts that the trial court erred in allowing the identification of appellant by an expert through DNA analysis "where the State's expert was unable to link her opinion to the evidence gathered in the case, rendering her opinion irrelevant."

Using cotton swabs that were attached to wooden sticks, much like a Q-tip, Houston Police Department ("HPD") personnel had collected a sample of blood from the pavement at the crime scene (the "blood swab") and also collected a comparison sample from appellant's mouth (the "oral swab"). These samples, along with a control swab, were tagged as evidence and sent to Joseph Chu at the HPD Crime Lab. Chu performed a test on the blood swab, and determined that it contained human blood. Chu then cut off all three swabs' wooden sticks, packaged the swabs' cotton tips in vials, and placed them in a storage freezer. Vials containing the three cotton tips were subsequently sent to Identigene, a private laboratory, where the biologic matter on the cotton tips was analyzed by Jennifer McCue, the forensic DNA analyst whose testimony is the subject of appellant's complaint.

HPD Officer Glen West, who collected the blood and oral swabs, testified at trial and identified State's Exhibit 21–A as the package in which he put the control swab, State's Exhibit 21–B as the package in which he put the blood swab from the crime scene, and State's Exhibit 22–A as

the package in which he put the oral swab from appellant. Then McCue testified on direct that she compared the samples extracted from the swabs she had received and that it was her "conclusion that the two DNA profiles matched." Appellant's counsel took McCue on cross-examination and asked her whether State's Exhibits 21–A, 21–B, and 22–A contained the swabs she had received to test. She said they did not. A recess was called and both a bench conference and a voir dire examination of McCue were held outside the jury's presence. It was determined that State's Exhibits 21–A, 21–B, and 22–A were packages containing only the wooden swab sticks and not the cotton swab tips that McCue had tested.

At this point, appellant's counsel objected to McCue's testimony as irrelevant because there was no evidence to tie the samples McCue had tested to the appellant or the crime scene. The trial court withheld its ruling on appellant's objection and stated that McCue would be allowed to continue testifying, over appellant's objection, subject to the State bringing the cotton swab tips to court the next day and proving up the chain of custody.

McCue continued to testify and returned the next day, as part of the State's proof of the chain of custody for the swabs. McCue identified State's Exhibits 24, 25, and 26 as containing the cotton swab tips she had received from the HPD Crime Lab in this case and testified that they were the samples she tested. She then reiterated her previous DNA-match testimony. Chu testified that he had received the items contained in State's Exhibits 24, 25, and 26 as evidence in this case. He testified that they were the cotton swab tips he had cut from their wooden sticks and that he had packaged the tips in Exhibits 24, 25, and 26. After Chu had completed his testimony, appellant's counsel reiterated his objection to McCue's DNA-match testimony, stating that Chu "never linked up the swabs that he broke off, that being 26, 25, or 24, to have ever come from 22–A, 21–A or 21–B."

In his brief, appellant complains that "the State failed to prove *any* chain" of custody and that the samples McCue tested were not linked to the evidence gathered in this case. We disagree. Officer West's testimony shows that he packaged cotton swabs attached to wooden sticks in what he identified as State's Exhibits 21–A, 21–B, and 22–A, and that these were delivered to the HPD Crime Lab. Chu's testimony shows that he received cotton swabs attached to wooden sticks as evidence in this case, cut the cotton swab tips off the sticks, and re-packaged the tips in what he identified as State's Exhibits 24, 25, and 26. McCue identified State's Exhibits 24, 25, and 26 as evidence she received from the HPD Crime Lab and testified that they contained the cotton swab tips she used to conduct DNA matching tests. Thus, the testimony of West, Chu, and McCue established a chain of custody. *See Lagrone v. State,* 942 S.W.2d 602, 617 (Tex.Crim.App.1997) (holding chain conclusively established if officer testifies he seized, tagged, stored, and retrieved item for trial); *Medellin v. State,* 617 S.W.2d 229, 232 (Tex.Crim.App. [Panel Op.] 1981) (holding chain conclusively established when lab follows same procedure).

If correct, appellant's contention, that a break in the chain of evidence was created because the State never specifically linked the three cotton swab tips to their specific wooden stick counterparts, would go only to the weight of McCue's DNA-match testimony and not its admissibility. *See Medellin,* 617 S.W.2d at 232 (noting that most questions of care and custody of item go to weight and not admissibility when chain is complete from initial collection to inside

lab). Appellant was free to argue the weight of this evidence in closing arguments, which he did.

Appellant's sixth point of error is overruled.

## CONCLUSION

We affirm the judgment of the trial court.