Opinion issued September 25, 2008













     




In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00029-CR




ROLANDO GUERRERO CONTRERAS, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1115361




MEMORANDUM OPINION

          Appellant, Rolando Guerrero Contreras, was charged by indictment with the
offense of aggravated robbery, enhanced by a prior felony conviction. See Tex.
Penal Code Ann. § 29.03 (Vernon 2003). Appellant pleaded not guilty to the
primary offense and pleaded “true” to the enhancement. A jury found him guilty as
charged, found the enhancement true, and assessed punishment at 15 years’
confinement.
          In his sole issue, appellant contends that the evidence of intent is factually
insufficient to sustain his conviction. 
          We affirm.
Background
          In the early morning hours of May 4, 2007, Mario Benavidez, was walking to 
work at Eastwood Manufacturing (“machine shop”) when he noticed a white
Chevrolet Impala that was moving down the street at a very slow pace. The car
initially passed him, then turned around and came back toward him. When the car
reached Benavidez, a man, later identified as appellant, rolled down the window and
pointed a “black gun” at Benavidez. Appellant said, “Hey amigo, let me have your
wallet and all your money.” Benavidez ducked down and ran toward the machine
shop, which was approximately a block-and-a-half away. Benavidez saw two of his
co-workers, Robert Buffington and Maurice Lovings, standing at the machine shop
gate. Benavidez began yelling to them as he ran, fearing that his life was in danger. 
When Benavidez arrived at the machine shop, the police were called.
          At trial, the testimonies of Buffington and Lovings corroborated that of
Benavidez. Buffington and Lovings both testified that they were standing at their
parked cars at the gate of the machine shop that morning, waiting for Benavidez to
arrive with a key to open the gate. They could see Benavidez up the street
approaching on foot. Appellant, who was in a light-colored Chevrolet Impala, pulled
into the space between the two cars, greeted the two men, then turned around and
headed back in the direction of Benavidez. Buffington testified that appellant’s
power steering pump was “howling.” Lovings testified that he saw a “bunch of
clothes” in the backseat of appellant’s car.
          Buffington testified that he saw the car stop next to Benavidez, that he saw
Benavidez “crouch and take off running,” and that Benavidez began yelling, “He
tried to rob me.” Lovings testified that he saw appellant’s car approach Benavidez,
that he saw brake lights, and that Benavidez “just took off running towards the
shop[.]” Both men testified that Benavidez said that appellant had tried to rob him
of his money and wallet. A few hours later, while on his delivery route, Lovings saw
appellant’s white car, with clothes piled in the back seat, parked at a nearby home. 
Lovings wrote down the license number and contacted the police. 
 
          Deputies M. Morgan and D. Wolford of the Houston Police Department went
to the address Lovings had reported, determined that the car matched the description
that the witnesses had given, and detained appellant. Deputy Wolford found a loaded
.38 caliber semi-automatic pistol, the butt of which was in plain site, on the passenger
side floorboard. Deputy Wolford stayed with appellant while Deputy Morgan went
to the machine shop and picked up Benavidez, Buffington, and Lovings.
          Deputy Wolford placed appellant on the right side of his patrol car, faced him
towards the roadway, and positioned appellant’s hands away from the roadway so that 
Benavidez, Buffington, and Lovings could not see the handcuffs on appellant. 
Deputy Morgan testified that he drove the three men slowly past appellant and
instructed them to determine whether appellant was the man they had seen that
morning. Benavidez, Buffington, and Lovings identified appellant as the person each
of them had seen earlier that morning. 
          Appellant testified that he lived a quarter mile from the machine shop and that,
on the morning of May 4, 2007, he was on his way to a corner store for coffee when
his car “started feeling funny.” Appellant testified that he pulled into an empty spot
“at that workplace,” where he saw two people, greeted them, and turned around to
return home. As he was slowing down to make the turn into his house, Benavidez
was walking across appellant’s driveway. Appellant testified that he rolled down his
window and asked Benavidez if he needed help or a ride, and that Benavidez just took
off running. According to appellant, he went ahead and pulled into his driveway and
went inside the house. Appellant then started working on repairing his power
steering pump. 
          Appellant admitted that, when Deputy Wolford initially questioned him on the
morning of May 4, 2007, appellant told him that he had not left his house that
morning and that, later, when Deputy Wolford told appellant that two witnesses had
identified him as the driver of the car, appellant acknowledged that he had left, but
asserted that he had seen only those two people. Subsequently, when Deputy
Wolford told appellant that a third witness, Benavidez, had identified him, appellant
admitted having come in contact with a third person while driving that morning. 
Appellant acknowledged that his driveway could not have been seen from the
machine shop because of a curve in the road.
          Appellant denied, however, having pointed a gun at Benavidez or having asked
for his wallet or money. Appellant further testified that the gun found in his vehicle
was not his and that he did not know where the gun came from or how it got into his
car. Appellant said that the Impala was not his car, that he had been driving it for two
weeks, and that his son had also driven it. 
 
          The jury convicted appellant of aggravated robbery and made an affirmative
finding that a deadly weapon was used. This appeal ensued.
Sufficiency of Evidence 
          In his sole


 issue, appellant contends that the evidence of intent is factually
insufficient to support his conviction of aggravated robbery.



A.      The Standard of Review
          When conducting a factual sufficiency review, we view all of the evidence in
a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim.
App. 2006).
 
          Under the first prong, we cannot conclude that “a conviction is ‘clearly wrong’
or ‘manifestly unjust’ simply because, on the quantum of evidence admitted, [we]
would have voted to acquit had [we] been on the jury.” See Watson v. State, 204
S.W.3d 404, 417 (Tex. Crim. App. 2006). We must accord “due deference” to the
fact finder, who is in the best position to evaluate the credibility and demeanor of
witnesses. Marshall, 210 S.W.3d at 625. Under the second prong, we cannot
“declare that a conflict in the evidence justifies a new trial simply because [we]
disagree[ ] with the jury’s resolution of that conflict.” Watson, 204 S.W.3d at 417.           In conducting a factual sufficiency review, we must discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).
B.      Analysis
          A person commits robbery if, in the course of committing theft, as defined in
Chapter 31, and with intent to obtain or maintain control of property, he, inter alia,
intentionally or knowingly places another in fear of imminent bodily injury or death.
Tex. Penal Code Ann. § 29.02(a) (Vernon 2003). Theft is the unlawful
appropriation of property with the intent to deprive the owner of the property. Tex.
Penal Code Ann. § 31.03 (Vernon Supp. 2008). 
 
          A person commits aggravated robbery if he commits robbery as defined in
section 29.02 and, inter alia, he uses or exhibits a deadly weapon. Tex. Penal Code
Ann. § 29.03(a)(2) (Vernon 2003). 
          A person acts intentionally with respect to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or to cause the result. Tex.
Penal Code Ann. § 6.03(a) (Vernon 2003). The intent element is directed to the
state of mind in threatening or placing the victim in fear. Posey v. State, 763 S.W.2d
872, 876 (Tex. App.—Houston [14th Dist.] 1988, pet. ref’d). “Knowledge and intent
can be inferred from the conduct of, remarks by and circumstances surrounding the
acts engaged in by the accused.” Id. Juries are permitted to infer intent from the
appellant’s conduct and surrounding circumstances. Ford v. State, 152 S.W.3d 752,
756 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d). Furthermore, proof of a
completed theft is not required to support a robbery conviction. Id.
          In Posey, the appellant was convicted of aggravated robbery after he threatened
a store clerk with a knife to facilitate stealing money from the store. Posey, 763
S.W.2d at 874–75. The knife was determined to be a deadly weapon. On appeal, the
appellant contended that the evidence was insufficient to prove the element of intent.
Id. at 875. The court concluded that, because the evidence showed that the appellant
had held a knife to the clerk in a threatening manner and that the clerk feared that her
life was in danger, the evidence was sufficient to support an inference that appellant
acted with the requisite intent. Id. at 876. 
          Here, the State presented evidence that appellant used or exhibited a firearm,
specifically a loaded .38 caliber semiautomatic pistol, in conjunction with demanding
Benavidez’s money. A firearm is a deadly weapon per se. Tex. Penal Code Ann. 
§ 1.07(a)(17)(A) (Vernon Supp. 2008). Benavidez testified that he feared that his life
was in danger. Proof of a completed theft is not required. Ford, 152 S.W.3d at 756.
Like the Posey court, we conclude that this evidence is factually sufficient to show
that, while in the course of committing theft and with the intent to obtain or maintain
control of Benavidez’s wallet and money, appellant intentionally threatened or placed
Benavidez in fear of imminent bodily injury or death through the use or exhibition of
a deadly weapon. See Tex. Penal Code Ann. § 29.03(a)(2); Posey, 763 S.W.2d at
876.
          Appellant testified that he simply saw Benavidez walking across his driveway 
and asked if he could help him. Appellant denied having pointed a gun at Benavidez
or having asked for his wallet or money. Appellant further testified that the Impala
was not his car, that he had only been driving it for two weeks, that his son had also
been driving it, and that the firearm found on the floorboard was not his and that he
did not know how it got there.
          The testimony also showed that the encounter between appellant and
Benavidez did not occur in appellant’s driveway. Buffington and Lovings testified
that they saw the incident, yet the record shows that appellant’s driveway could not
have been seen from the machine shop because of a curve in the road. In addition,
appellant admitted at trial that he had offered several versions of the events when the
police questioned him on the morning of the incident. The record also shows that
Deputy Wolford found the firearm in plain sight on the floorboard of the car, yet
appellant, who had been driving the car for two weeks, claimed not to have ever seen
it.
          It is the province of the jury to resolve conflicts in the testimony and to
determine what weight to afford the evidence. See Marshall, 210 S.W.3d at 625.
Here, the jury chose to believe the testimony of Benavidez, Buffington, and Lovings. 
We may not re-weigh the evidence and substitute our judgment for that of the
factfinder. Furthermore, a completed theft is not a required element of the offense. 
See Ford, 152 S.W.3d at 756.
          Reviewing all of the evidence in a neutral light, we conclude that a reasonable
jury could have concluded that appellant acted with the intent to obtain or maintain
control of Benavidez’s wallet or money and that appellant intentionally or knowingly
threatened or placed Benavidez in fear of imminent bodily injury or death while using
or exhibiting a deadly weapon. See Tex. Penal Code Ann. § 29.03(a)(2). We
cannot conclude that the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or that the verdict is against the great weight and preponderance of
the evidence. See Marshall, 210 S.W.3d at 625. We hold that the evidence of the
element of intent is factually sufficient to support appellant’s conviction for the
offense of aggravated robbery. 
          Accordingly, we overrule appellant’s issue.
                                                         Conclusion
          We affirm the judgment of the trial court.
 


                                                             Laura Carter Higley
                                                             Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).