Opinion issued May 21, 2009













     




In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00082-CR




MICHAEL AKEAM JNLOUIS, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1052455




MEMORANDUM OPINION



          Appellant, Michael Akeam JnLouis, was charged by indictment with the first-degree felony offense of murder, to which he pleaded not guilty. See Tex. Penal
Code Ann. § 19.02 (Vernon 2003). A jury convicted appellant, and the trial court
assessed punishment at confinement for 35 years.
          Appellant presents four points of error on appeal. In his first and second points
of error, appellant contends that the evidence is legally and factually insufficient to
support his conviction. In his third point of error, appellant contends that the trial
court erred by admitting improper impeachment testimony. In his fourth point of
error, appellant contends that he received ineffective assistance of counsel.
          We affirm.
Background
          In November 2005, Tyrone Norris, a retired man, was living alone at an
apartment on Bissonnet Street in Houston. Norris did not have his own electricity. 
Instead, he ran a couple of lamps and a television in his apartment by back-feeding
electricity into an outlet from an outside light in the common area. Consequently,
Norris’s apartment was very dimly lit at night. According to Norris, he and others,
including the complainant, Christy Wallen, regularly engaged in drug use together at
the apartment. 
 
          On Friday, November 25, 2005, appellant was watching a movie in his
bedroom with Marie Mojica and an unidentified person named “Ray.” At some point
just after 11:00 p.m., Wallen knocked on Norris’s front door, and he let her inside. 
Norris told Wallen that “Yane” and “Twin” (later identified as appellant and his co-defendant, Anthony Brown, respectively) had been there earlier in the day looking for
her. Wallen appeared nervous and asked Norris why they were looking for her. 
          Five minutes later, appellant and Brown knocked on Norris’s door, again
looking for Wallen. Norris let them into his living room, where Wallen was seated
on the couch. Norris testified that appellant and Brown began arguing with Wallen
concerning something that she had allegedly taken from them. Either appellant or
Brown hit Wallen. Norris testified that there was “hitting and slapping.” Norris told
the men and Wallen to take the argument out of his apartment. Wallen refused to
leave with appellant and Brown, and asked Norris for help. Norris refused. 
          Norris testified that appellant and Brown took Wallen by her legs, dragged her
off of the couch, and began dragging her out of the apartment. They had dragged
Wallen to a point just inside the front door when Norris heard two gunshots and saw
“sparks.” Norris testified that he was standing at the back of the living room and
could not see Wallen because “[t]hey was [sic] standing in front of her. . . . [S]he was
on the floor and I was—they was [sic] in front of her standing up and their back was
[sic] turned to me.” He did not see appellant or Brown with a firearm and did not
know who shot Wallen. Norris testified that everyone ran out of his apartment and
that he jumped over Wallen and ran to a neighbor’s apartment. 
          Mojica testified that she had gone to Norris’s apartment at around 11:00 the
night of the incident to “do drugs.” She remembered Twin and Yane being at the
apartment, that “one was laying [sic] on the couch and the other one was laying in
[sic] in the chair,” but that they had left. She did not remember if they came back. 
While she was in the bedroom, she heard Wallen arrive and ask Norris for help. 
Mojica heard Norris refuse. Mojica then heard Wallen arguing with someone because
“somebody took somebody else’s dope.” Mojica said that she stayed in the bedroom
because she “kn[e]w they had guns . . . ‘[c]ause they always had them.” She said that
there was another girl


 in the living room who was trying to break up the argument
and she heard that girl say, “Twin don’t mess up your life like this. Don’t do this.” 
Mojica then heard two gunshots. 
          Officer A. Arevala of the Houston Police Department (“HPD”) testified that,
when he arrived at the scene, Wallen was lying on her side, on the floor, just inside
the front door of Norris’s apartment, surrounded by a large pool of blood. Wallen’s
clothing was partially removed.
          HPD Officer M. Scott testified that the pattern of blood on the floor indicated
that Wallen was lying face down when she was shot and that her body had been “drug
across the floor.” Wallen’s pants were down around her knees. He opined that there
had either been a sexual assault or that the dragging had been so violent that her
clothing was coming off. Officer Scott said that the Harris County Medical
Examiner’s Office determined that there had not been a sexual assault. Based on his
interview with Norris, Officer Scott learned that he was looking for two people and
prepared a photo spread. Norris later identified appellant and Brown from the photo
spread.
          HPD Officer C. Scales testified that there were no bullet casings or weapons
recovered. HPD Officer P. LeBlanc testified that he found a bandana on the living
room floor and a ski mask on the chair in the living room. 
          C. Davis of the HPD Crime Lab testified that he received several samples for
DNA testing, which included fingernail scrapings from Wallen, as well as blood and
semen samples found on her body and clothing.


 Appellant, Brown, and Norris were
excluded as contributors of these substances. Davis also tested a sample of the
bandana found at the scene, and the DNA results excluded appellant. Appellant could
not be excluded, however, as the major contributor of the DNA recovered from the
ski mask found on the chair in Norris’s living room.
          Dr. S. Wilson, assistant medical examiner for Harris County, testified that the
cause of Wallen’s death was “gunshot wounds.” Dr. Wilson explained in detail that
Wallen had a gunshot wound to the left side of her head, one to the left side of her
neck, and one to her right hand. Dr. Wilson testified that it appeared that Wallen’s
right hand had been on top of her head and that a bullet went through her hand and
into her head. Dr. Wilson explained that there was stippling present on her neck and
right hand that indicated that the gun was fired from as little as two to three inches
away. The bullets had fragmented inside the wounds.


 Wallen had several bruises
and abrasions on her body, including fresh bruising around both eyes.
          Appellant’s friend and alibi witness, Christie Carrington, testified that she was
familiar with Norris’s apartment because it was across the street from her sister’s
apartment and because her boyfriend sold drugs there. Carrington testified that she
picked up appellant and Brown, who were 17 and 18 years of age, respectively, at
3:00 p.m. on the day of the incident and that they stayed with her at her apartment in
Baytown until Sunday afternoon. Carrington said that appellant and Brown did not
have access to a car.
 
          Appellant was tried with his co-defendant, Brown. The jury was charged on
the law of parties and found both appellant and Brown guilty.


 
Impeachment Testimony
          In his third point of error, appellant contends that the trial court erred by
admitting improper impeachment testimony. Specifically, appellant complains that
the trial court improperly permitted the State to attempt to impeach Mojica with her
prior statements to Sergeant Scales.
          Mojica testified that Brown and appellant had been at the apartment on the
night of the incident, but that they had left. Mojica testified that she did not know
whether Brown came back and that she did not see or hear him because she was in the
back room. Mojica testified that she heard Wallen arguing with someone in another
room but that she did not know if Wallen was hit. 
          The State then asked Mojica the following:[State]:During this interview on December 21st of 2005,
when [sic] Sergeant Scales, do you remember
telling him you saw [Brown] come into the
apartment?
          [Mojica]:                     I don’t remember that.
          . . . .
 
          [State]:                        Do you recall talking to a Sergeant Scales on
January 4, 2006:
          [Mojica]:                     Just vaguely.
          . . . . 
          [Defense Counsel]:     Do you recall telling Sergeant Scales that
[appellant] started a fight with [Wallen]?
          [Mojica]:                     I don’t remember saying that.
          . . . .
          [Defense Counsel]:     Do you recall . . . whether or not you told
Sergeant Scales that [appellant] had called
[Brown] for help?
          [Mojica]:                     I can’t really say ‘cause I was half asleep when
he called. I was asleep.
          . . . .
          [Defense Counsel]:     Do you recall making a statement as to whether
[appellant] and [Brown] were hitting [Wallen] in
this case?
          [Mojica]:                     No I don’t. 

 The State then sought to impeach Mojica with her statements to Sergeant
Scales. After a discussion at the bench, the trial court ruled that it would allow the
testimony with regard to whether appellant started the fight with Wallen, whether
appellant asked Brown for help, and whether appellant and Brown were hitting
Wallen.

          Sergeant Scales testified as follows:

 
          [State]:                        Officer, with respect to your conversation with
[Mojica] . . . did you speak with her specifically
about the events that took place that night?
          [Scales]:                      Yes.
          [State]:                        Did you—she specifically state to you that
[appellant] started the fight with [Wallen]?
          [Defense Counsel]:     Objection, Your Honor. Hearsay.
          The Court:                  Overruled.
          [Defense Counsel]:     Thank you.
          [Scales]:                      Yes.
          [State]:                        Did she specifically state to you that [appellant]
called [Brown] for help or back up?
          [Scales]:                      Yes.
          [Defense Counsel]:     Objection, Your Honor. Hearsay.
          The Court:                  Overrule.
          . . . 
          [Scales]:                      Yes.
          [State]:                        With respect to—did she specifically tell you that
both [appellant] and [Brown] were hitting and
striking [Wallen]?
          [Defense Counsel]:     Objection, Your Honor, again. Hearsay.
          The Court:                  Overrule. 
          [Scales]:                      Yes.

 
          We review a trial court’s decision to admit or exclude evidence under an abuse
of discretion standard. Long v. State, 130 S.W.3d 419, 426 (Tex. App.—Houston
[14th Dist.] 2004, no pet.). We must uphold the trial court’s decision as long as it is
within the zone of reasonable disagreement, giving almost total deference to the trial
court’s determination of historical facts that are supported by the record. Wheeler v.
State, 67 S.W.3d 879, 888 & n.24 (Tex. Crim. App. 2002); Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997).

          When a prior statement is not offered as primary evidence, but to impeach the
witness’s credibility, it is not hearsay.


 Flores v. State, 48 S.W.3d 397, 404 (Tex.
App.—Waco 2001, pet. ref’d). Texas Rule of Evidence 613(a), which concerns
examining witnesses regarding a prior inconsistent statement, provides in relevant
part:

In examining a witness concerning a prior inconsistent statement made
by the witness, whether oral or written, and before further
cross-examination concerning, or extrinsic evidence of, such statement
may be allowed, the witness must be told the contents of such statement
and the time and place and the person to whom it was made, and must
be afforded an opportunity to explain or deny such statement. . . . If the
witness unequivocally admits having made such statement, extrinsic
evidence of same shall not be admitted.

 
Tex. R. Evid. 613(a). “If the admission is partial, qualified, or otherwise equivocal,
or if the witness claims to not remember making the prior statement, the prior
statement is admissible for impeachment purposes.” Ruth v. State, 167 S.W.3d 560,
566 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d). 

          Here, when questioned about her statements to Sergeant Scales, Mojica did not
unequivocally admit making them; rather, she claimed she could not remember. 
Hence, Mojica’s prior statements, which were inconsistent with her testimony at trial,
were admissible for impeachment purposes. See id.

          Further, the record shows that appellant did not request a limiting instruction
until the charge conference.

          Texas Rule of Evidence 105 provides as follows: 

When evidence which is admissible as to one party or for one purpose
but not admissible as to another party or for another purpose is admitted,
the court, upon request, shall restrict the evidence to its proper scope
and instruct the jury accordingly; but, in the absence of such request the
court’s action in admitting such evidence without limitation shall not be
a ground for complaint on appeal.

 
Tex. R. Evid. 105(a). A party opposing the admission or unrestricted use of evidence
has the burden of objecting and requesting a limiting instruction when the evidence
is introduced. See, e.g., Hammock v. State, 46 S.W.3d 889, 892, 894 (Tex. Crim. App.
2001). If a limiting instruction is not requested when the evidence is introduced, then
it is admitted for all purposes. Delgado v. State, 235 S.W.3d 244, 251 (Tex. Crim.
App. 2007). Here, because appellant did not request a limiting instruction when
Mojica’s prior inconsistent statements were admitted through Sergeant Scales’s
testimony, the testimony was admitted for all purposes. 

          Accordingly, we overrule appellant’s third point of error.

Sufficiency of the Evidence 

          In his first and second points of error, appellant contends that the evidence is
legally and factually insufficient to support his conviction because there is no
evidence that he caused Wallen’s death or acted with intent to assist in causing her
death.  

A.      The Standard of Review

          A legal sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 & n.5 (Tex. Crim. App. 2005) (citing
Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979)); Parker v. State, 192
S.W.3d 801, 804 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). When, as here,
the verdict results at least in part from the jury’s considering circumstantial evidence,
we must view that evidence “in combination and its sum total”; furthermore, “[i]t is
the logical force of the circumstantial evidence,” rather than any number of “links,
that supports a jury’s verdict.” See Evans v. State, 202 S.W.3d 158, 164, 166 (Tex.
Crim. App. 2006).

 
          We begin the factual sufficiency review with the presumption that the evidence
supporting the jury’s verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light and ask
whether the jury was rationally justified in finding guilt beyond a reasonable doubt.
Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); Watson v. State, 204
S.W.3d 404, 415 (Tex. Crim. App. 2006). Evidence is factually insufficient (1) when
the evidence supporting the conviction is so weak that the verdict seems clearly
wrong and manifestly unjust, or (2) when the evidence supporting the conviction is
outweighed by the great weight and preponderance of the contrary evidence so as to
render the verdict clearly wrong and manifestly unjust. Roberts v. State, 220 S.W.3d
521, 524 (Tex. Crim. App. 2007).

          We cannot reverse when the greater weight and preponderance of the evidence
actually favors conviction. Id. We may not substitute our judgment for that of the
jury merely because we would have reached a different result. Grotti, 273 S.W.3d at
280 (citing Watson, 204 S.W.3d at 414). Instead, the record must show some
objective basis for concluding that the great weight and preponderance of the
evidence contradicts the jury’s verdict. See Watson, 204 S.W.3d at 417.

          In conducting a factual sufficiency review, we must also discuss the evidence
that according to the appellant, most undermines the jury’s verdict. See Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 

B.      Applicable Law

          Under the Texas Penal Code, as applicable to this case, a person commits
murder if he “intentionally or knowingly causes the death of an individual.” Tex.
Penal Code Ann. § 19.02(b)(1). A person acts intentionally with respect to a result
of his conduct when it is his conscious objective or desire to cause the result. Id.
§ 6.03(a). A jury may infer intent from any facts which tend to prove its existence,
including the acts, words, and conduct of the accused, the method of committing the
crime, and the nature of the wounds inflicted on the victim. Hart v. State, 89 S.W.3d
61, 64 (Tex. Crim. App. 2002); Ford v. State, 152 S.W.3d 752, 756 (Tex.
App.—Houston [1st Dist.] 2004, pet. ref’d). A firearm is, per se, a deadly weapon.
Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2008). When a deadly
weapon is used and death results, the inference of an intent to kill is almost
conclusive. Flanagan v. State, 675 S.W.2d 734, 745 n.9 (Tex. Crim. App. 1982).

          A person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for whom he is criminally
responsible, or by both. Tex. Penal Code Ann. § 7.01(a) (Vernon 2003). Each
party to an offense may be charged with commission of the offense. Id. § 7.01(b). 
Pursuant to Section 7.02(a)(2), a person is criminally responsible for an offense
committed by the conduct of another if, inter alia, “acting with intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense.” Id. § 7.02(a)(2).




C.      Analysis

          The State charged appellant with having “intentionally or knowingly caused
the death of Christy Wallen . . . by shooting [her] with a deadly weapon, namely a
firearm.” See Tex. Penal Code Ann. § 19.02(b)(1). The jury was charged that it
could find appellant guilty of murder if it found that appellant “intentionally or
knowingly caused the death of [Wallen], by shooting [her] with a deadly weapon,
namely a firearm” or if it found that appellant’s co-defendant, Brown, “intentionally
or knowingly caused the death of [Wallen], by shooting [her] with a deadly weapon,
namely a firearm, and that [appellant], with the intent to promote or assist the
commission of the offense, if any, solicited, encouraged, directed, aided or attempted
to aid [Brown] to commit the offense.” See id. § 7.02(a)(2). 

          1.       Legal Sufficiency

          In his first point of error, appellant contends that the evidence is legally
insufficient to support his conviction. Specifically, appellant contends that the State 
failed to present any evidence that he shot Wallen or that he “aided or encouraged the
murder.” Appellant asserts in his brief that “there was some evidence that [he] and
his co-defendant acted together at first, but not in the shooting itself.” 

          The State had the burden to prove either (1) that appellant intentionally or
knowingly caused Wallen’s death by shooting her or (2) that Brown intentionally or
knowingly caused Wallen’s death by shooting her and that appellant, who was acting
with intent to promote or assist in causing her death, aided or attempted to aid Brown.

          First, the State presented evidence that Brown intentionally caused Wallen’s
death by shooting her. Norris testified that appellant and Brown came to his
apartment looking for Wallen multiple times on the day of the incident; that appellant
and Brown argued with Wallen; that there was “hitting and slapping”; that appellant
and Brown, acting together, dragged Wallen by her legs to the front door; and that,
while Wallen was lying on the floor and appellant and Brown stood over her, he
heard two gunshots and saw sparks. Specifically, Norris testified, “They was [sic]
standing in front of her. . . . [S]he was on the floor and I was—they was [sic] in front
of her standing up and their back [sic] was turned to me.” Norris testified that
appellant and Brown then fled the apartment. 

          Mojica testified that she was in the bedroom, that she heard someone arguing
with Wallen, that she stayed in the bedroom because she “knew that they had guns,”
that she heard someone say, “Don’t do this Twin. Don’t waste your life like this,”
and then immediately she heard two gunshots. 

          Officer Scales testified that “Twin” is Brown’s nickname. Dr. Wilson testified
that Wallen was shot in the head and neck and that the cause of Wallen’s death was
“gunshot wounds.” 

          Establishing that a defendant is the perpetrator of a crime can be proved by
direct or circumstantial evidence. Earls v. State, 707 S.W.2d 82, 85 (Tex. Crim. App.
1986); Greene v. State, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003,
pet. ref’d). It is the province of the jury to weigh the evidence and to draw reasonable
inferences therefrom. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Wesbrook v.
State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Here, viewing the evidence in the
light that supports the verdict, the jury could have reasonably concluded that Brown
caused Wallen’s death by shooting her with a firearm. 

          Under Section 7.02(a)(2), appellant is liable as a party to the murder if the
evidence showed that he acted with the intent to assist or promote the murder, and
that he solicited, encouraged, directed, aided or attempted to aid Brown in committing
the murder. Tex. Penal Code Ann. § 7.02(a)(2).

          The evidence must show that at the time of the offense the parties were acting
together, each contributing some part towards the execution of their common purpose.
Brooks v. State, 580 S.W.2d 825, 831 (Tex. Crim. App. 1979); Lewis v. State, 193
S.W.3d 137, 142 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A jury may
consider the events occurring before, during, and after the commission of the offense,
and may rely on actions of the defendant that show an understanding and common
design to commit the offense. King v. State, 29 S.W.3d 556, 564 (Tex. Crim. App.
2000). The jury may rely upon circumstantial evidence and may infer intent from
appellant’s acts, words, or conduct. See Powell v. State, 194 S.W.3d 503, 506 (Tex.
Crim. App. 2006); Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994).

          Here, the evidence shows that Wallen visited Norris’s apartment nearly
everyday. On the day of the incident, according to Norris, appellant and Brown came
to Norris’s apartment and asked for Wallen, who was not there. At approximately
11:00 p.m. that night, Wallen arrived at Norris’s apartment. Norris testified that, five
minutes later, appellant and Brown showed up again, asking for Wallen. Viewing
this evidence in the light that supports the verdict, the jury could have rationally
inferred that appellant and Brown were lying in wait for Wallen. 

 
          Norris testified that appellant and Brown were angry, that they believed that
Wallen had stolen something from them, and that one of them physically attacked
Wallen in Norris’s living room. The evidence shows that Wallen was in fear and
begged Norris to help her. The evidence shows that appellant and Wallen acted in
concert to violently drag Wallen by her legs from appellant’s couch toward the front
door. See King, 29 S.W.3d at 564 (considering evidence of understanding and
common design); Brooks, 580 S.W.2d at 831 (considering evidence of parties acting
together). Norris testified that Wallen fought back. Officer Scott testified that
Wallen’s clothing was coming off from the force of the dragging. Norris testified
that, at the front door, Wallen was lying on the floor and that appellant and Brown
were standing together in front of Wallen when he heard two gunshots and saw 
sparks. Viewing this evidence in the light that supports the verdict, the jury could
have reasonably concluded that appellant and Brown were acting together with a
common purpose in shooting Wallen. 

          Mojica testified that she had seen appellant and Brown at Norris’s apartment
on the evening of the incident. She said that “one was laying [sic] on the couch and
one was laying [sic] in the chair.” The evidence shows that appellant’s DNA was
recovered from the ski mask that Officer LeBlanc found on the chair. Mojica testified
that appellant and Brown had left after she saw them and that she did not think that
they had returned. The evidence also shows, however, that Mojica and Wallen
arrived at the apartment that night at around 11:00 p.m. and that appellant and Brown
arrived just “five minutes” later. Mojica testified that she was in the bedroom and
that she did not know if it was appellant and Brown in the living room, but that she
could hear the substance of the argument, which was that Wallen had stolen drugs
from “someone.” Mojica further testified that she stayed in the bedroom when she
heard the arguing because she knew that “they had guns.” (Emphasis added.) Mojica
testified that, during the course of the argument, she heard someone say, “Don’t do
this Twin. Don’t waste your life like this.” Then, she immediately heard two
gunshots. Mojica testified that she was scared to testify at trial, and the evidence
showed that she had to be compelled by arrest to attend trial. 

          It is within the province of the jury to resolve conflicts in the testimony and to
draw reasonable inferences therefrom. See Jackson, 443 U.S. at 319, 99 S. Ct. at
2789. Viewing this evidence in the light that supports the verdict, the jury could
have rationally concluded that “they,” emphasized above, referred to appellant and
Brown, and that Mojica equivocated at trial because she was scared to definitively
point to them. 

          The evidence also shows that appellant and Brown then fled together. Flight,
though not dispositive, can be considered by the trier of fact as an indication of guilt.
Wilkerson v. State, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (finding of intent
may be inferred from evidence of flight from scene). Dr. Wilson testified that Wallen
was shot twice—once in the neck and again through her right hand and into her
head—and that these shots caused her death. 

          It is the logical force of the circumstantial evidence, rather than any certain
number of “links, that supports a jury’s verdict.” See Evans, 202 S.W.3d at 164, 166.

Viewing the evidence in the light that supports the verdict, the jury could have
reasonably concluded that appellant and Brown were acting with a common design,
that appellant acted with the intent to promote or assist the commission of the murder,
and that appellant aided or attempted to aid Brown in committing the murder. See
Tex. Penal Code Ann. § 7.02(a)(2); King, 29 S.W.3d at 564. We hold that the
evidence is legally sufficient to support the conviction.

          Accordingly, we overrule appellant’s first point of error.

          2.       Factual Sufficiency

          In his second point of error, appellant contends that the evidence is factually
insufficient to support his conviction. Specifically, appellant contends that “the
evidence was probably sufficient to show that appellant was one of the men trying to
drag the complainant outside after Norris told them to get out, but there was no
evidence that he knew or had reason to know Anthony Brown was armed at that
time.” 

          In a factual sufficiency review, we must discuss the evidence appellant argues
best supports his claim. Sims, 99 S.W.3d at 601. Mere presence or even knowledge
of an offense do not make one a party to the offense. Beardsley v. State, 738 S.W.2d
681, 685 (Tex. Crim. App. 1987); Ahrens v. State, 43 S.W.3d 630, 633 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). However, presence is a circumstance
tending to support guilt when combined with other factors that show participation. 
Beardsley, 738 S.W.2d at 685. 

          Here, as discussed above, the State presented evidence to show that appellant,
acting with intent to promote or assist a murder, solicited, encouraged, directed,
aided, or attempted to aid Brown in committing the murder. See Tex. Penal Code
Ann. § 7.02(a)(2). 

          The State presented evidence that, on the day of the incident, appellant and
Brown were looking for Wallen. The evidence shows that appellant and Brown were
angry and that there was a physical altercation at Norris’s apartment. Norris testified
that only one of the men struck Wallen, but he was unable to recall whether it was
appellant or Brown. Officer Scales testified that Mojica reported to him that
appellant started the fight with Wallen, that appellant asked Brown for help, and that
appellant and Brown were hitting Wallen. From this evidence, a rational jury could
have concluded that appellant and Brown were acting together in executing a plan. 

          The evidence next shows that appellant and Wallen acted in concert to
violently drag Wallen by her legs from Norris’s couch toward the front door and that
Wallen fought back. The evidence shows that, in the narrow hallway just inside the
front door, appellant and Brown moved together from Wallen’s legs around to her
head, where they stood together over Wallen’s head with their backs to Norris. 
Seconds later, someone yelled, “Don’t do this Twin. Don’t waste your life like this,”
and Norris saw sparks as Wallen was shot in the head and neck from a distance of two
or three inches away. This evidence, when viewed in a neutral light, supports a
conclusion that appellant and Brown were acting with a common design, that
appellant acted with the intent to promote or assist the commission of the murder, and
that appellant aided or attempted to aid Brown in committing the murder.

          Appellant argues the evidence does not support his conviction as a party to the
murder because there is no evidence that he knew Brown had a gun or that he would
bring it into the altercation with Wallen. The record shows that Mojica said that she
stayed in the bedroom during the altercation in the living room because she “kn[e]w
they had guns . . . ‘[c]ause they always had them.” The factfinder may choose to
believe all, some, or none of the testimony presented. Cain v. State, 958 S.W.2d 404,
407–09 (Tex. Crim. App. 1997).

 
          In addition, appellant contends that the evidence, when viewed in a neutral
light, at most, supports that appellant only intended an assault. “Proof of a mental
state, such as an intent to kill, must almost always be proved by circumstantial
evidence.” Smith v. State, 56 S.W.3d 739, 745 (Tex. App.—Houston [14th Dist.]
2001, pet. ref’d). A jury may infer appellant’s intent from any facts that tend to prove
its existence, including the acts, words, and conduct of the accused, the method of
committing the crime, and the nature of the wounds inflicted on the victim. Hart, 89
S.W.3d at 64; Ford, 152 S.W.3d at 756. 

          Appellant further contends that he was merely present in the apartment at the
time of the murder and that mere presence or even knowledge of an offense do not
make one a party to the offense. Appellant relies upon Vodochodsky v. State, 158
S.W.3d 502 (Tex. Crim. App. 2005) and Reina v. State, 940 S.W.2d 770 (Tex.
App.—Austin 1997, pet. ref’d), both of which reversed murder convictions for
factually insufficient evidence. 

          In Vodochodsky, the Court of Criminal Appeals held that, although the
evidence was legally sufficient, it was factually insufficient to support the appellant’s
guilt as a party to capital murder. Vodochodsky, 158 S.W.3d at 511. There, the
appellant shared a house with his girlfriend, Sara; Sara’s sister, Violet; and Violet’s
husband, Engleton. Id. at 505. Engleton became angry at law enforcement officers
after he was arrested in a domestic violence matter. Id. Engleton made several
remarks to cell mates that he planned to exact revenge on the officers and to “make
some headlines.” Id. Cellmates overheard Engleton talking to appellant on the
telephone, asking appellant to ensure that Violet did not take Engleton’s semi-automatic assault rifle or his semi-automatic pistol from the house. Id. While
Engleton was in jail, Sara and Violet moved Violet out of the house and went to the
home of the appellant’s brother, Anthony. Id.

          The appellant bailed Engleton out of jail, drove him to a gun shop, where
appellant looked at guns while Engleton purchased several types of ammunition, and
then the two went home. Id. at 505–06. At 5:30 that evening, Sara called and spoke
with the appellant, who whispered to her not to come home and that he would meet
her at Anthony’s. Id. at 506. At 7:45 p.m., a neighbor, Essary, drove by and saw
appellant loading a car. At 8:07 p.m., a 911 call was made from the house. Id. At
8:13 p.m., the first officer responded and, at 8:28 p.m., he was shot from a field across
the road from the house. Id. At 8:30 p.m., another officer arrived and was shot. Id.
At 8:31 p.m., a neighbor, Hutton, saw someone walking on the roof of the house with
a flashlight. Id. Between 8:51 and 8:58 p.m., three more officers arrived and were
shot. Id. at 506–07. Engleton eventually shot himself and died. Id. at 507.

 
          The appellant arrived at Anthony’s house at 9:00 p.m., which was a distance
of 22 miles, or 21 to 23 minutes. Id. The appellant told Sara that Engleton was going
to kill himself and to watch the news, and the appellant gave Violet a farewell letter
from Engleton. Id. 

          The next day, the appellant admitted to Sara that he was at the house when the
bogus 911 call was made. Id. The appellant told an investigator that he had left the
house at 8:00 p.m. and that he did not know about Engleton’s plan. Id. 

          The day after, the appellant talked with the neighbor, Essary, who showed the
appellant where he had seen the flashlight the night of the killings. Id. The appellant
responded, “Yeah, that’s where one of the pigs—that’s probably where one of the
pigs got shot at.” Id. Essary told the appellant that the police cut up the fence across
the road, and the appellant responded, “No, that’s where Engleton cut it up” and
“[T]hat’s where he was shooting at.” Id. at 508. The appellant said he knew that
Engleton had gone “over the edge” when he took the deputy’s gun. Id. Essary
testified that the appellant told him that he was at the house when the 911 call was
made. Id. The appellant told Essary that Engleton wanted to do this the night he was
arrested for assaulting Violet but that the appellant told Engleton, “No, . . . we ain’t
got nothing planned yet.” Id. According to Essary, the appellant proudly told him he
had bailed Engleton out of jail “[t]o do this.” Id.

          In Vodochosky, as here, the appellant was convicted of capital murder under
the law of parties, pursuant to Texas Penal Code section 7.02(a)(2). See id. at
508–09. On appeal there, as here, the appellant complained that he was merely
present at the scene and therefore could not be held liable for the acts of another. See
id. at 509.

          In Vodochosky, the court first concluded that the evidence was legally
sufficient. Id. at 510. The court reasoned that there was evidence of two shooters,
there was discussion of a plan, and there were inconsistencies in the appellant’s
statements about when he left the house. Id. at 509–10. The court concluded,
however, that although the evidence could legally support the jury’s conclusion, the
overwhelming weight of the evidence mitigated against such conclusion and was
therefore factually insufficient. Id. at 510. The court reasoned that there was no
evidence of any affirmative act by the appellant to assist Engleton and that other
evidence suggested that the appellant was not working with Engleton. Id. at 510–11. 

          Here, unlike Vodochosky, the evidence before us shows affirmative acts by
appellant to assist Brown. The evidence shows that appellant affirmatively acted in
concert with Brown by going to the apartment, instigating or participating in a
confrontation with Wallen, acting together with Brown in physically taking Wallen
from the couch by her legs and violently dragging her toward the door of the
apartment, then stepping back around to her head in conjunction with Brown, and
standing beside Brown over Wallen as she was shot in the neck and head from two
to three inches away. Here, unlike Vodochosky, there is no other evidence presented
suggesting that appellant was not working with Brown. 

          In Reina, the appellant and two friends got into an altercation in an alley with
a homeless man, Davila. 940 S.W.2d at 771. There was evidence that appellant
started the altercation by throwing a rock at Davila. Id. at 772. After throwing the
rock, however, appellant went and waited in the car. Id. The two friends continued
the altercation, which culminated in their setting fire to Davila. Id. at 771. The
appellant was convicted, inter alia, of attempted murder. Id. On appeal, the appellant
complained that the evidence was factually insufficient to support his conviction. Id.
at 773. The court agreed, reasoning that the only evidence suggesting that the
appellant may have had the intent to kill Davila was testimony that the appellant
threw a rock and hit Davila at the beginning of the incident and had argued with him
earlier in the day. Id. at 773–74. The court concluded that such evidence did not
support that the appellant meant to kill Davila or to encourage his friends to kill
Davila. Id. at 774.

          In Reina, the appellant left the scene after throwing the rock, which is evidence
that he intended that the altercation cease. Here, unlike Reina, appellant’s
participation in the events carried up to and through the shooting of Wallen. 

          Here, viewing all of the evidence in a neutral light, we conclude that a rational
jury would be justified in finding guilt beyond a reasonable doubt. See Grotti, 273
S.W.3d at 280. We cannot conclude that the evidence supporting the conviction is so
weak that the verdict seems clearly wrong and manifestly unjust or that the evidence
supporting the conviction is outweighed by the great weight and preponderance of the
contrary evidence so as to render the verdict clearly wrong and manifestly unjust. See
Roberts, 220 S.W.3d at 524. We hold that the evidence is factually sufficient.

          Accordingly, we overrule appellant’s second point of error.

Ineffective Assistance of Counsel

          In his fourth point of error, appellant contends that he was denied his right to
effective assistance of counsel. Specifically, regarding Sergeant Scales’s testimony
of Mojica’s statements addressed in appellant’s third point of error, appellant
contends that his trial counsel failed to request a limiting instruction at the time the
impeachment evidence was admitted and failed to object to that evidence on the basis
of Rule of Evidence 403.

A.      Standard of Review 

          Appellant is entitled to reasonably effective assistance of counsel. See U.S.
Const. amend. VI; Tex. Const. art. I, § 10. The right to counsel, however, does not
mean the right to errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex.
Crim. App. 2006). To prove ineffective assistance of counsel, appellant must show
that (1) counsel’s performance fell below an objective standard of reasonableness and
(2) that, but for the deficient performance of counsel, there is a reasonable probability
that the result of the proceeding would have been different. Strickland v. Washington,
466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984); Andrews v. State, 159
S.W.3d 98, 101 (Tex. Crim. App. 2005). A “reasonable probability” is a probability
sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104
S. Ct. at 2068.

          To prevail, appellant must prove ineffective assistance by a preponderance of
the evidence and must overcome the strong presumption that counsel’s conduct falls
within the wide range of reasonably professional assistance or might reasonably be
considered sound trial strategy. See Robertson, 187 S.W.3d at 482–83; Gamble v.
State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). A failure
to make a showing under either prong defeats a claim of ineffective assistance of
counsel. Rylander v. State, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

          As the reviewing court, we look to the totality of the representation and to the
circumstances of the case, not to isolated errors. Robertson, 187 S.W.3d at 483–84.
We must consider the adequacy of assistance as viewed at the time of trial, not
through hindsight. Id. at 482.

          Additionally, we cannot speculate as to the reasons supporting counsel’s
behavior. Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Allegations of
ineffectiveness must be firmly founded in the record. Id. at 833 & n.13. Ordinarily,
the record on direct appeal is undeveloped and cannot adequately reflect the motives
behind trial counsel’s actions. Rylander, 101 S.W.3d at 110–11. Generally, a silent
record that provides no explanation for counsel’s actions will not overcome the strong
presumption of reasonable assistance. Id. In the absence of evidence of counsel’s
reasons for the challenged conduct, an appellate court should not find deficient
performance unless the conduct was so outrageous that no competent attorney would
have engaged in it. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).
In the rare cases in which the record on direct appeal is sufficient to prove that
counsel’s performance was deficient, an appellate court should address the claim.
Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).

          A single egregious error of omission or commission by counsel has been held
to constitute ineffective assistance, even in the absence of a record setting forth
counsel’s reasons for the challenged conduct. Vasquez v. State, 830 S.W.2d 948,
950–51 (Tex. Crim. App .1992); McKinny v. State, 76 S.W.3d 463, 470–71 (Tex.
App.—Houston [1st Dist.] 2002, no pet.).

 
B.      Limiting Instruction

          As discussed above, the Court of Criminal Appeals has construed Rule 105(a)
to require that a party opposing evidence must object and request a limiting
instruction when the evidence is introduced. Hammock v. State, 46 S.W.3d 889, 894
(Tex. Crim. App. 2001); Garcia v. State, 887 S.W.2d 862, 878 (Tex. Crim. App.
1994). When counsel fails to request a limiting instruction at the first opportunity,
the evidence is admitted for all purposes. See Hammock, 46 S.W.3d at 895; Garcia,
887 S.W.2d at 878. Here, appellant complains that his counsel was ineffective
because he failed to request a limiting instruction at the time Sergeant Scales’s
testimony of Mojica’s prior statements was admitted. 

          The record before us is undeveloped as to counsel’s reasons for not requesting
a limiting instruction. Appellant did not file a motion for new trial, in which
counsel’s reasons could have been developed on the record. Without testimony from
trial counsel, appellant has not met his burden to overcome the strong presumption
that counsel’s conduct falls within the wide range of reasonable professional
assistance or that counsel could have acted pursuant to sound strategy. See Robertson,
187 S.W.3d at 482; Gamble, 916 S.W.2d at 93; see also Howland v. State, 966
S.W.2d 98, 105 (Tex. App.—Houston [1st Dist.] 1998), aff’d, 990 S.W.2d 274
(holding that not requesting limiting instruction can constitute sound trial strategy).

          Even if we conclude that counsel’s performance was not within the broad range
of sound professional assistance, appellant has not demonstrated that there is
reasonable probability that the result of the proceeding would have been different had
counsel sought to limit the use of Sergeant Scales’s testimony concerning Mojica’s
statements to the police sooner than in the jury charge. See Strickland, 466 U.S. at
687, 104 S.Ct. at 2064; Hernandez, 988 S.W.2d at 770 n. 3. The record shows that
other evidence supports the jury’s conclusion.

          Norris testified that, on the day of the incident, appellant and Brown came to
his apartment looking for Wallen. Five minutes after Wallen arrived, appellant and
Brown arrived again, looking for Wallen. Norris let them into his living room, where
Wallen was seated on the couch. Norris testified that appellant and Brown began
arguing with Wallen concerning something that she had allegedly taken from them
and that either appellant or Brown hit Wallen. Norris testified that there was “hitting
and slapping.” Norris told the men and Wallen to take the argument out of his
apartment. Norris testified that appellant and then Brown acted in concert to violently
drag Wallen by her legs from Norris’s couch toward the front door and that Wallen
fought back. Brown testified that, in the hallway just inside the front door, appellant
and Brown moved together from Wallen’s legs around to her head, where they stood
together over Wallen’s head with their backs to Norris. Seconds later, someone
yelled, “Don’t do this Twin. Don’t waste your life like this,” and Norris saw sparks. 
The evidence shows that Wallen was shot in the head and neck from a distance of as
little as two or three inches. This evidence supports a conclusion that appellant acted
with the intent to promote or assist the commission of Wallen’s murder, and that
appellant aided or attempted to aid Brown in committing the murder.

          We conclude that appellant has not shown that there is a reasonable probability
that the outcome of his trial would have been different. We hold that appellant did
not satisfy his burden under the second prong of Strickland. Strickland, 466 U.S. at
687, 104 S. Ct. at 2064; Hernandez, 988 S.W.2d at 770 n. 3.

C.      Rule 403 Objection

          Appellant contends that his trial counsel was ineffective because he failed to
argue that, even if Mojica’s statements to Sergeant Scales “could be admitted as
impeachment evidence, under Rule 403 of the Rules of Evidence admission of the
statements was unfair because they were more prejudicial than probative.” 

          The record shows that counsel objected to Sergeant Scales’s testimony
concerning Mojica’s statements on the basis of hearsay. We concluded in appellant’s
third point of error that these statements were admissible under an exception to the
hearsay rule, that of Rule 613. Tex. R. Evid. 613. Appellant contends that counsel
should have further objected on the basis of Rule of Evidence 403 and that such
objection would have been effective. Tex. R. Evid. 403. 

          Again, the record before us is undeveloped as to counsel’s reasons for not also
objecting on the basis of Rule 403 because appellant did not file a motion for new
trial. We cannot second-guess through hindsight the strategy of counsel at trial, nor
will the fact that another attorney might have pursued a different course support a
finding of ineffectiveness. Scheanette v. State, 144 S.W.3d 503, 509–10 (Tex. Crim.
App. 2004); Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). Appellant
has not met his burden to overcome the strong presumption that counsel’s conduct
falls within the wide range of reasonable professional assistance or that counsel could
have acted pursuant to sound strategy. See Robertson, 187 S.W.3d at 482; Gamble,
916 S.W.2d at 93.

          In addition, as discussed, appellant has not shown that there is a reasonable
probability that, but for Sergeant Scales’s testimony concerning Mojica’s statements,
the outcome of trial would have been different. See Andrews, 159 S.W.3d at 102. 
We conclude that appellant has not met his burden to show ineffective assistance of
counsel by a preponderance of the evidence.

          Accordingly, we overrule appellant’s fourth point of error.

 
 
                                                         Conclusion

          We affirm the judgment of the trial court.

 




                                                             Laura Carter Higley

                                                             Justice







Panel consists of Justices Higley, Wilson,


 and Nuchia.






Do not publish. See Tex. R. App. P. 47.2(b).